**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLBY BALCH,<br><br>     Plaintiff,<br><br>     v.<br><br>TAUBMAN CENTERS, INC., MAYREE C. CLARK, MICHAEL J. EMBLER, JANICE L. FIELDS, MICHELLE J. GOLDBERG, NANCY KILLEFER, CIA BUCKLEY MARAKOVITS, ROBERT S. TAUBMAN, RONALD W. TYSOE, and MYRON E. ULLMAN, III,<br><br>     Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Colby Balch ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against Taubman Centers, Inc. ("Taubman" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Taubman by Simon Property Group, Inc. ("Simon"), Simon Property Group, L.P. (the "Simon Operating Partnership"), Silver Merger Sub 1, LLC ("Merger Sub 1"), and Silver Merger Sub 2, LLC ("Merger Sub 2" and together with Simon, the Simon Operating Partnership and Merger Sub 1, the "Simon Parties").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New Jersey.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff is, and has been at all relevant times hereto, an owner of Taubman's common stock.

7.      Defendant Taubman is an S&P MidCap 400 Real Estate Investment Trust engaged in the ownership, management and/or leasing of 26 regional, super-regional and outlet shopping centers in the U.S. and Asia. The Company is incorporated in Michigan. The Company's properties include The Mall at Short Hills, located in Short Hills, New Jersey. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "TCO."

8.      Defendant Mayree C. Clark ("Clark") is a director of the Company and a member of the Special Committee of the Board.[1]

9.      Defendant Michael J. Embler ("Embler") is a director of the Company and a member of the Special Committee of the Board.

10.     Defendant Janice L. Fields ("Fields") is a director of the Company.

11.     Defendant Michelle J. Goldberg ("Goldberg") is a director of the Company.

12.     Defendant Nancy Killefer ("Killefer") is a director of the Company.

13.     Defendant Cia Buckley Marakovits ("Marakovits") is a director of the Company and a member of the Special Committee of the Board.

---

[1] According to the Proxy Statement (defined below),

> [t]he Taubman Board formed the Special Committee, with Mayree C. Clark, Michael J. Embler, Cia Buckley Marakovits and Myron Ullman III as its members, and appointed Mr. Ullman as its chairman. The Special Committee was delegated the full power and authority of the Taubman Board to review, evaluate and negotiate a potential sale of Taubman and any alternatives that may be available to Taubman, including remaining an independent company, to engage its own advisors and to make a recommendation to the Taubman Board regarding any such transaction. The Taubman Board's delegation also provided that the Taubman Board would not recommend a potential sale of Taubman to Simon without a prior favorable recommendation by the Special Committee.

*See* Proxy Statement at 20.

14.     Defendant Robert S. Taubman ("Taubman") is President, Chief Executive Officer, and Chairman of the Board of the Company. As of May 22, 2020, Defendant Taubman, his brother William S. Taubman ("W. Taubman"), the Company's Chief Operating Officer, and certain entities and trusts affiliated with Defendant Taubman, W. Taubman, or with other members of their immediate family in the aggregate have the power to vote approximately 30% of the outstanding shares of Taubman voting stock.

15.     Defendant Ronald W. Tysoe ("Tysoe") is a director of the Company.

16.     Defendant Myron E. Ullman, III ("Ullman") is a director of the Company and a member of the Special Committee of the Board.

17.     Defendants Clark, Embler, Fields, Goldberg, Killefer, Marakovits, Taubman, Tysoe, and Ullman are collectively referred to herein as the "Individual Defendants."

18.     Defendants Taubman and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

19.     Simon owns shopping, dining, entertainment and mixed-use destinations across North America, Europe and Asia. Simon is incorporated in Delaware with principal executive offices located in Indianapolis, Indiana. Simon's common stock trades on the NYSE under the ticker symbol, "SPG."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

20.     On February 10, 2020, Taubman and Simon announced that they had entered into a definitive agreement under which Simon will acquire an 80% ownership interest in The Taubman Realty Group Limited Partnership ("TRG"). Simon, through Simon Operating Partnership, will

acquire all of Taubman common stock for $52.50 per share in cash and the Taubman family will

sell approximately one-third of its ownership interest at the transaction price and remain a 20%

partner in TRG. The press release states, in pertinent part:

### Simon Property Group to Acquire Taubman Centers, Inc.

Taubman Shareholders to Receive $52.50 Per Share in Cash
Transaction Expected to be Immediately Accretive to Simon's Funds From Operations

NEWS PROVIDED BY
**Simon**
Feb 10, 2020, 07:15 ET

INDIANAPOLIS and BLOOMFIELD HILLS, Mich., Feb. 10, 2020 /PRNewswire/ -- Simon Property Group, Inc. (NYSE: SPG) ("Simon") and Taubman Centers, Inc. (NYSE: TCO) ("Taubman") today announced that they have entered into a definitive agreement under which Simon will acquire an 80% ownership interest in The Taubman Realty Group Limited Partnership ("TRG"). Simon, through its operating partnership, Simon Property Group, L.P., will acquire all of Taubman common stock for $52.50 per share in cash and the Taubman family will sell approximately one-third of its ownership interest at the transaction price and remain a 20% partner in TRG.

TRG is engaged in the ownership, management and/or leasing of 26 super-regional shopping centers in the U.S. and Asia. TRG's ownership includes 24 high-quality retail assets (including 21 in the United States and 3 in Asia), consisting of approximately 25 million feet of gross leasable area, and will continue to be managed by its existing executive team, under the leadership of Taubman Chairman, President and Chief Executive Officer Robert S. Taubman, in partnership with Simon. The parties have agreed to work together to implement best practices to achieve operational efficiencies and will eliminate Taubman's public company costs immediately following closing.

The transaction has been unanimously recommended by a Special Committee of independent directors of Taubman and approved unanimously by the Boards of Directors of both companies. Simon expects to fund the total required cash consideration of approximately $3.6 billion with existing liquidity.

Simon Chairman of the Board, Chief Executive Officer and President David Simon stated, "We are very pleased to announce this transaction, which will be immediately accretive to Simon's FFO. By joining together, we will enhance the ability of TRG to invest in innovative retail environments that create exciting shopping and entertainment experiences for consumers, immersive opportunities

for retailers, and substantial new job prospects for local communities. I look forward to partnering with Bobby and the TRG executive team in this exciting new joint venture."

Myron E. Ullman, Lead Director of the Taubman Board of Directors and Chairman of the Special Committee of the Taubman Board of Directors, added, "The Taubman Board of Directors has always been focused on maximizing shareholder value. With this transaction, we will deliver a significant, immediate cash premium to shareholders. The Special Committee of the Board unanimously believes that this transaction with Simon is a great outcome for all of our stakeholders."

Robert S. Taubman, Chairman, President and Chief Executive Officer of Taubman, added, "Since Taubman Centers' founding 70 years ago, we have built a portfolio of high-quality assets and continuously adapted to the evolving retail landscape. I am proud of all that this company's talented employees have achieved and am thrilled to have the opportunity to join together with Simon through this joint venture. Over the last few years, David and I have developed an excellent personal relationship and importantly, Simon shares our commitment to serving retailers, shoppers and the communities in which we operate. The Board and I are confident that Simon is the ideal partner to help us build on our progress."

\*       \*       \*

Transaction Details

Required approvals for the transaction include: (i) two-thirds of the outstanding Taubman voting stock and (ii) a majority of the outstanding Taubman voting stock not held by the Taubman family. The Taubman family, which represents approximately 29% of outstanding Taubman voting stock, has agreed to vote in favor of the transaction. The transaction is also subject to customary closing conditions and is expected to close in mid-2020.

Taubman will be releasing its fourth quarter and full year 2019 earnings this morning in a separate press release.

Advisors

BofA Securities is serving as financial advisor to Simon and Paul, Weiss, Rifkind, Wharton & Garrison LLP and Latham & Watkins LLP are serving as legal advisors. Goldman Sachs & Co. LLC is serving as financial advisor to Taubman and Wachtell, Lipton, Rosen & Katz and Honigman LLP are serving as legal advisors. The Special Committee of the Board of Directors of Taubman has retained Lazard as its independent financial advisor and Kirkland & Ellis LLP as its independent legal counsel.

21.     On May 29, 2020, Defendants caused to be filed with the SEC a Schedule 14A

Definitive Proxy Statement (the "Proxy Statement") under the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Proxy Statement, which recommends that Taubman shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) the Company's financial projections; (2) the financial analyses performed by the Special Committee of the Board's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in connection with its fairness opinion; and (3) the sales process leading up to the Proposed Transaction.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Transactions; (ii) Reasons for the Transactions and Recommendation of the Special Committee and the Taubman Board; (iii) Opinion of Financial Advisor to the Special Committee; and (iv) Certain Unaudited Prospective Financial Information.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the June 25, 2020 shareholder vote, Taubman shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning Taubman's Financial Projections**

25.     The Proxy Statement omits material information concerning Taubman's financial projections.

26.     The Proxy Statement states that on December 20, 2019, the Special Committee of the Board reviewed with Taubman's senior management a set of preliminary financial projections,

7

with management noting that these "projections remained incomplete pending additional details that management was still preparing." The Proxy Statement states, in relevant part:

> On December 20, 2019, the Special Committee held a meeting, which was attended by representatives of Taubman's senior management, Kirkland, Lazard and Goldman. At the meeting, Taubman's senior management reviewed with the Special Committee a set of preliminary financial projections that the Special Committee had instructed management to prepare in the context of evaluating a transaction with Simon, with management noting that such projections remained incomplete pending additional details that management was still preparing. The Special Committee reviewed with management the key drivers and rationale behind the preliminary financial projections, including the shifting retail landscape, and views on the achievability of such projections. During an executive session of the Special Committee, the Special Committee concluded that it should receive and review the additional portions of such projections prior to making any final determination with respect to such projections.

> Proxy Statement at 26-27.

27.     The Proxy Statement states that on January 6, 2020, the Special Committee to the Board reviewed with Taubman's senior management the "Projections," which reflected updates to the December 20, 2019 preliminary financial projections.[2] The Proxy Statement states, in relevant part:

> [O]n January 6, 2020, the Special Committee held a meeting, with representatives of Taubman's senior management, Wachtell Lipton, Kirkland, Lazard and Goldman in attendance. At the meeting, members of Taubman's senior management reviewed with the Special Committee the Projections (as described in "–*Certain Unaudited Prospective Financial Information*"), which reflected updates to the preliminary financial projections presented to the Special Committee on December 20, 2019. The Projections reflected the inclusion of the portions of the projections that had not been included in the projections reviewed by the Special Committee on December 20, 2019[.]

> Proxy Statement at 27.

---

[2] The "Projections" are "certain non-public financial projections as to the potential future performance of Taubman for the years ended December 31, 2020 through December 31, 2024" that were prepared by Taubman's management and provided to the Special Committee of the Board and to Lazard in connection with its financial analyses. *See* Proxy Statement at 57.

28.     The Proxy Statement, however, fails to disclose, with sufficient specificity: (1) the preliminary financial projections reviewed by the Special Committee of the Board; (2) the additional portions of the preliminary financial projections that Taubman's management was still preparing as of December 20, 2019; (3) the differences between the preliminary financial projections reviewed at the December 20, 2019 meeting and the Company's Projections; and (4) the impact that the updates to the preliminary financial projections had on the Projections.

29.     The Proxy Statement provides a purported summary of the Projections.

30.     The Proxy Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (i) Beneficial interest in Property NOI, (ii) Beneficial interest in EBITDA, (iii) Adjusted FFO, and (iv) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

31.     The disclosure of this projected financial information is material because it would provide Taubman shareholders with a basis to project the future financial performance of Taubman and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32.     When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by

schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[3]

33.     Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

34.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Taubman shareholders.

### 2. Material Omissions Concerning Lazard's Financial Analyses

35.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Lazard.

36.     The Proxy Statement provides that on January 9, 2020, Simon submitted a "revised verbal proposal for Simon to acquire Taubman for $57.00 per share in cash" (the "January 9

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 2, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Proposal").

37.    The Proxy Statement provides that on "January 12, 2020, Lazard provided [Defendant] Marakovits with preliminary financial analyses relating to the January 9 Proposal, to assist [Defendant] Marakovits in her discussion with [Defendant] Taubman and Mr. Simon scheduled for later that day."

38.    The Proxy Statement, however, fails to sufficiently disclose Lazard's preliminary financial analyses relating to the January 9 Proposal.

39.    The Proxy Statement fails to disclose the following concerning Lazard's "*Discounted Cash Flow Analysis*": (1) all line items used to calculate the estimated future cash flows that Taubman is expected to generate for each of fiscal years 2020 through 2023; (2) Taubman's terminal value; (3) the individual inputs and assumptions underlying the (i) range of capitalization rates of 5.50% to 6.50%; and (ii) discount rates ranging from 5.50% to 6.75%; (4) the enterprise value range of the Company; (5) net tangible other assets and liabilities; (6) the value of peripheral land; (7) the outstanding principal amount of Taubman's share of consolidated secured debt, unconsolidated secured debt, and other credit facilities and term loans; (8) the outstanding principal amount due to the holders of Taubman Series J Preferred Stock and Taubman Series K Preferred Stock; and (9) Taubman's cash and cash equivalents.

40.    The Proxy Statement fails to disclose the individual multiples and/or financial metrics of each company and transaction utilized by Lazard in its "*Comparable Companies Public Trading Analysis*" and "*Precedent Transaction Valuation Analysis*[.]"

41.    The Proxy Statement fails to disclose the following concerning Lazard's "*Analyst Price Targets Analysis*": (1) the individual price targets for Taubman observed by Lazard in its analysis; and (2) the sources of those price targets.

42.     The Proxy Statement fails to disclose the following concerning Lazard's "*Premiums Paid Analysis*": (1) the transactions observed by Lazard in its analysis; and (2) the individual premiums paid in each of the transactions.

43.     The valuation methods, underlying assumptions, and key inputs used by Lazard in rendering its purported fairness opinion must be fairly disclosed to Taubman shareholders. The description of Lazard's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Taubman shareholders are unable to fully understand Lazard's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Taubman shareholders.

### 3.  Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

44.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

45.     The Proxy Statement provides that on "December 2, 2019, . . . the Special Committee instructed [Defendant] Taubman that he should not commit to a purchase price less than $63.00 per share" (the "December 2 Instruction").

46.     The Proxy Statement provides that on "December 6, 2019, . . . the Special Committee . . . emphasized . . . that [Defendant] Taubman should not commit to a purchase price less than $60.00 per share" (the "December 6 Instruction").

47.     On December 6, 2019, Simon made an oral proposal to acquire Taubman for $57.00 per share, in a mix of cash and stock. Defendant Taubman conveyed that, based on prior feedback from the Special Committee, he did not believe the Special Committee would accept the proposal.

Simon then made "a further revised oral proposal . . . to acquire Taubman for $60.00 per share, again in a mix of cash and shares of Simon common stock" (the "Updated December 6 Proposal").

48.     The Proxy Statement, however, fails to disclose the Special Committee's basis for the December 2 Instruction and December 6 Instruction.

49.     Then, on January 9, 2020, Simon made the January 9 Proposal, stating it "was no longer willing to pursue a transaction on the terms of the Updated December 6 Proposal, and Simon instead submitted a revised verbal proposal for Simon to acquire Taubman for $57.00 per share in cash (as opposed to cash and stock, as previously proposed)."

50.     On "January 12, 2020, [Defendant] Marakovits, [Defendant] Taubman and Mr. Simon met to discuss the January 9 Proposal. The parties discussed the financial aspects of the January 9 Proposal[.] . . . Mr. Simon communicated to [Defendant] Marakovits and [Defendant] Taubman that, in light of a variety of factors, including the deteriorating retail environment, the pending bankruptcy of Forever 21 and Simon's recent stock performance, the per share price of $57.00 represented Simon's best and final price and that, should the parties fail to agree on price and move forward with the transaction at that time, Simon would need to put the transaction on hold, for a period of four to six weeks, while it focused on a potential transaction involving Forever 21."

51.     At this "[January 12, 2020] meeting, [Defendant] Marakovits agreed on behalf of the Special Committee to proceed with the potential transaction on the basis of a per share price of $57.00 in cash[.] . . . [Defendant] Taubman also indicated that he was in favor of proceeding with the potential transaction on the basis of a per share price of $57.00 in cash."

52.     Thereafter, the parties negotiated the terms of a merger agreement.

53.     Then, on "January 26, 2020, Mr. Simon contacted [Defendant] Taubman and

communicated that while Simon was still interested in pursuing a transaction with Taubman, it would need to assess market conditions further and would not continue to engage in negotiations of the transaction agreements until Simon had made such an assessment."

54.     On "February 5, 2020, Mr. Simon contacted [Defendant] Taubman and communicated that Simon was prepared to reengage in transaction discussions, but that Simon would not pay more than $52.00 per share." Following Defendant "Taubman's objection to the revised proposal, Mr. Simon offered to increase the purchase price to $52.50 per share in cash, . . . [stating] that this was Simon's best and final offer" (the "February 5 Proposal").

55.     On February 9, 2020, the Special Committee of the Board and the Board unanimously determined that the Proposed Transaction offering $52.50 per share to Taubman shareholders was advisable and fair to, and in the best interests of, Taubman and its shareholders.

56.     The Proxy Statement fails to disclose the Individual Defendants' basis for failing to provide a counteroffer to Simon's offer of $52.50 per share or attempt to negotiate an even higher price.

57.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Taubman shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

60.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

61.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

62.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

68.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

70.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 2, 2020

Respectfully submitted,

**HALPER SADEH LLP**

/s/Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application
forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*